IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2009

## STATE OF TENNESSEE v. ALFRED GENE BULLOCK

**Appeal from the Criminal Court for Fentress County**
**No. 9346    Shayne Sexton, Judge**

_____

**No. M2008-01284-CCA-R3-CD - Filed December 17, 2009**

_____

After the entry of a best-interest plea to felony child abuse, a Fentress County trial court denied judicial diversion for Appellant, Alfred Gene Bullock. The trial court sentenced Appellant to three years as a Range I, standard offender. Appellant appeals the denial of judicial diversion. After a review of the record, we determine that the trial court considered the factors required for the grant or denial of judicial diversion and did not abuse its discretion in denying judicial diversion to Appellant. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined and J.C. MCLIN, J., Concurred in Result.

Paul Crouch, Allardt, Tennessee, for the appellant, Alfred Gene Bullock.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilbur, Assistant Attorney General; William Paul Phillips, District Attorney General, and John G. Galloway, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Appellant was indicted by the Fentress County Grand Jury in January of 2008 for aggravated child abuse of a child under six years old. In March of 2008, Appellant entered a best-interest guilty plea to one count of felony child abuse of a child under six years of age. There was no agreement as to Appellant's sentence.

The trial court held a sentencing hearing on May 8, 2008. At the hearing, the trial court learned that Appellant, who was twenty-two years of age at the time of the hearing, was in the military and had served a tour of duty in Iraq for approximately one year. When Appellant returned from Iraq, he married Tammy Mayer, a woman that he had met on the internet and had known for a few months prior to his deployment. This marriage ended after two months.

At the time of the incident which gave rise to the indictment, Appellant was married to Holly Bullock. Appellant and Ms. Bullock were married on June 30, 2007, after dating for about two months. Ms. Bullock had a three-year-old son, T.L.[1]

Lori Martin, Ms. Bullock's mother, testified at the hearing. Ms. Martin explained that she tried to visit her daughter, grandson, and Appellant frequently at their home in Clarksville, Tennessee. During these visits, Ms. Martin observed that Appellant was very stern with T.L. In particular, Ms. Martin noticed that Appellant constantly told T.L. that he was doing things "wrong."

In December of 2007, Appellant, Ms. Bullock, and T.L. came to stay with the Martins for the Christmas holidays. The family arrived on December 15, 2007. Ms. Martin noticed immediately that Appellant was very strict about bedtime, telling T.L. that he was "watching [him] like a hawk." Ms. Martin recalled one particular incident in which Appellant spanked T.L. because he would not take a nap after church, even though the child had not eaten lunch and it was nearly 1:30 p.m. Appellant allowed the child to "eat in the room" but informed everyone that the child was "not coming out . . . till he's [taken] a nap." Ms. Martin expressed her concern about Appellant's behavior to her daughter. Specifically, she felt that the discipline was too aggressive for a three-year old.

Several days later, Ms. Martin walked by the bathroom and saw T.L. inside. T.L. looked at her and said, "Hi, Mamaw." Almost immediately, Appellant walked by, spanked T.L. and told him to stop "playing around."

Ms. Martin described an incident that occurred on the morning of December 24, 2007. Ms. Bullock made a bowl of cereal for T.L.'s breakfast. When T.L. got the cereal, he said a short prayer and then started to eat. Appellant did not see the child pray and, according to Ms. Martin, "flew up off the couch just a getting it towards" the child. Ms. Martin told Appellant that T.L. said a prayer, and Appellant asked if she was lying.

Later that evening, Ms. Martin tried to give parenting advice to Appellant. She informed him that some children do not take naps once they turned three.

The next day, Ms. Martin turned on a video camera that was in the spare bedroom where Appellant, Ms. Bullock, and T.L. were sleeping. Ms. Martin thought that Appellant would probably take the child back to the room for a nap while the rest of the family visited Ms. Martin's mother at

---

[1] It is the policy of this Court to refer to minor victims of child abuse by their initials.

her home. When Ms. Martin listened to the videotape[2] that evening around 10:30, she heard Appellant threaten T.L. and snap his belt. Then about fifteen minutes later, Appellant started hitting T.L. Ms. Martin counted between twenty-seven and thirty blows that Appellant inflicted on the child.

When Ms. Martin discovered what Appellant had done to the child, her husband told Appellant to leave the house because he hurt T.L. Appellant admitted that he spanked the child but denied that he hit the child twenty-seven to thirty times. The police were notified, and Appellant was arrested. The police and the family took photographs of the child's injuries.

T.L. had difficulty sleeping the night of the incident and awoke with a nightmare several nights later. He even informed Ms. Bullock that Appellant hurt him.

Ms. Bullock confirmed at the hearing that she was married to Appellant and expecting his child. At the time of the hearing, she was nearly seven months pregnant. However, Ms. Bullock expressed her intent to get a divorce once Appellant was convicted. Ms. Bullock informed the court that she was "shocked" when Appellant admitted that he spanked T.L. so many times. Ms. Bullock testified that she had never seen Appellant use alcohol or drugs and that Appellant had never physically abused her during their relationship. Ms. Bullock felt that Appellant's behavior would prohibit her from allowing or trusting Appellant to be alone with her children ever again.

Appellant testified at the hearing. He claimed that he was shocked when confronted with the accusation that he had spanked T.L. twenty-eight times. In fact, Appellant did not believe the claims until he heard the tape of the incident at the preliminary hearing. After hearing the tape, Appellant did not deny responsibility for his actions. Instead, Appellant expressed gratitude for being allowed to see "the person that [he] was becoming." Appellant apologized for his actions and expressed hope that Ms. Bullock and T.L. could forgive him some day in the future.

Appellant described his actions as "wrong and barbaric" and recognized that he was trying to be a father to T.L. in "the wrong way." Appellant admitted that, at the time of the beating, he thought that he could spank the child "a little bit . . . then [he would] get the point and go to sleep." Appellant admitted that he had harmed himself on one prior occasion after getting mad at a squad leader. Appellant punched a wall so hard that he broke his pinky finger.

Several witnesses testified in Appellant's behalf. They confirmed that Appellant's behavior and attitude were different after his tour of duty in Iraq. They all described Appellant as a good person.

After Appellant was arrested, he completed an anger management workbook and was also given a parental and mental assessment from the Department of Children's Services. The results of

---

[2]The video camera was pointed at a particular area of the room. Therefore, it does not contain images, only audio.

the assessment indicated that Appellant suffered from posttraumatic stress disorder. Appellant indicated his willingness to receive a psychiatric consultation and/or a medical exam.

At the conclusion of the hearing, the trial court denied judicial diversion, making findings on the record relating to the denial. The court noted that Appellant treated the victim with exceptional cruelty during the commission of the offense and that Appellant abused a position of private trust, which resulted in emotional and mental harm to the victim. The trial court also noted that Appellant had served in the military in "an admirable fashion" but in the end concluded that the circumstances of the offense, including Appellant's own statement that he had become a "monster,"[3] led the court to the conclusion that there was "no basis to consider [Appellant] for judicial diversion." The trial court described Appellant's actions as "criminal" and "completely unnecessary and outside the realm of any modern or medieval parenting that was acceptable." As a result, the trial court sentenced Appellant to three years as a Range I, standard offender.

Appellant filed a timely notice of appeal, seeking a review of the trial court's denial of diversion.

*Analysis*

On appeal, Appellant argues that the trial court erred in denying judicial diversion because the trial court "did not consider and comment to all the factors" necessary to deny diversion and "erred in finding mental and emotional damage to the child when no facts or evidence was offered to support that finding." Specifically, Appellant argues that the trial court "took statements out of context, improperly created evidence . . . , and most importantly, failed to explain on the record the specific reasons for his determination." Further, Appellant argues that there was no evidence of mental or emotional damage to the victim and that no proof was presented by the State to support that allegation. The State, on the other hand, posits that the trial court "went through a lengthy and thorough analysis of the factors that weighed against diversion" and that the judge's decision is supported by the record.

Judicial diversion is similar to pretrial diversion. However, judicial diversion follows a determination of guilt, and the decision to grant judicial diversion is initiated by the trial court, not the prosecutor. *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). Judicial diversion allows a defendant who is judged guilty to, "upon successful completion of a diversion program, receive an expungement from all 'official records' any recordation relating to 'arrest, indictment or information, trial, finding of guilty, and dismissal and discharge' pursuant to the diversion statute." *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999) (quoting T.C.A. § 40-35-313(b)). "The effect of discharge and dismissal under the diversion statute 'is to restore the person . . . to the status the person occupied before such arrest or indictment or information.'" *Id.* (quoting T.C.A. § 40-35-313(b)). A final disposition of the case does not occur until either the

---

[3] The trial court took this statement from the presentence report in which Appellant told an officer during his statement that he was "sorry for not recognizing the anger and stress inside me before it grew into a monster."

defendant successfully completes the diversion program or violates a condition of his release. *State v. Teresa Dockery*, No. E2001-01493-CCA-R3-CD, 2002 WL 1042187, at *2 (Tenn. Crim. App., at Knoxville, May 23, 2002), *perm. app. denied*, (Tenn. Nov. 4, 2002); *State v. Glenna Kidd*, No. 01C01-9808-CR-00344, 1999 WL 298309, at *1 (Tenn. Crim. App., at Nashville, May 13, 1999). Judicial diversion may be ordered only with the consent of a "qualified defendant." T.C.A. § 40-35-313(a)(1)(A).

A qualified defendant is one who:

(a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;

(b) Is not seeking deferral of further proceedings for a sexual offense or a Class A or Class B felony; and

(c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i)(a), (b), & (c).

Abuse of discretion is the proper standard upon which to review the denial of an application for judicial diversion. *State v. Paul David Cable*, No. 03C01-9409-CR-00349, 1995 WL 328796, at *2-3 (Tenn. Crim. App., at Knoxville, June 1, 1995). When a defendant contends that the trial court committed error in refusing to grant judicial diversion, we must determine whether the trial court abused its discretion by denying the defendant's request for judicial diversion. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). In other words, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Id.*; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

The criteria that the trial court must consider in determining whether a qualified defendant should be granted judicial diversion are similar to those considered by the prosecutor in determining suitability for pretrial diversion and includes the following: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) the deterrence value to the defendant and others." *Parker*, 932 S.W.2d at 958; *see also Cutshaw*, 967 S.W.2d at 343-44. An additional consideration is whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as of the defendant. *See Parker*, 932 S.W.2d at 958; *Cutshaw*, 967 S.W.2d at 344; *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000).

After hearing the evidence, the trial court concluded that the circumstances of the offense were extreme but noted that Appellant had a non-existent criminal history. The trial court noted Appellant's willingness to attend treatment and acknowledgment of his problem. However, the trial court recognized that there was a risk "for this type of event to occur again." The trial court found

that Appellant had not shown that he had dealt with his mental health issues, stressing that Appellant's mental instability led to "extreme violence" against a child, incapable of defending himself. The trial court considered Appellant's service in the military to be "admirable" but found the need and duty to protect the public from incidents such as this. In other words, the trial court concluded that the need for deterrence was high and that judicial diversion was not an option, in part, due to the fact that Appellant treated the victim with exceptional cruelty during the commission of the offense and abused a position of private trust as one of the caregivers for T.L. The trial court felt that incarceration would depreciate the seriousness of the offense and pointed out the fact that the beating was brutal.

Appellant makes an argument that the trial court improperly considered mental and emotional damage to the child where there was no evidence of damage introduced by the State. Thus, Appellant contends, the "court should not have considered this issue since it was not an element of the crime" and there was "no proof" presented by the State. The trial court talked about the mental and emotional damage suffered by the victim as part of the circumstances of the offense. This is one of the criteria the trial court is to use in order to determine whether to grant a qualified defendant judicial diversion. There is no requirement, as Appellant suggests, that the trial court can only consider things that are elements of the offense. We agree that aside from Ms. Martin's testimony regarding T.L.'s nightmare right after the offense, there is no evidence in the record concerning emotional damage to the child. We also agree that the trial court did not specifically state on the record which factors weighed in favor of diversion and which ones did not. Nevertheless, the court noted that the extreme circumstances of the offense warranted the denial of judicial diversion. Based on the record before us we cannot conclude the trial court abused its discretion in this case.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE